USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _06/13/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIE BRIGHT,

                Plaintiff,

    -against-

ANTHONY J. ANNUCCI, *et al.*,

                Defendants.

---

No. 18-cv-11111 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Willie Bright ("Plaintiff"), proceeding *pro se*, initiated this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against employees of the New York State Department of Corrections and Community Supervision ("DOCCS") and a private physician arising from repeated brutal sexual assaults by correctional officers, deprivations of medical care, and retaliations against him. In his Second Amended Complaint ("SAC"), Plaintiffs asserts numerous causes of action, including (1) excessive force, (2) deliberate indifference to medical needs, (3) retaliation, (4) failure to protect, and (5) injunctive relief. (SAC, ECF No. 122.) He asserts some or all of these claims against DOCCS employees Anthony J. Annucci, Office of Mental Health ("OMH") Employee Adam Barta (sued as Barter), OMH Dr. Robert Bentivegna, DOCCS Sergeant Michael Blot, DOCCS Lieutenant Orazio Bucolo, OMH Nurse Charlene Cody, DOCCS Correction Officer ("CO") Christopher Dillon, DOCCS CO Freeman, OMH Employee Colleen Gleason, DOCCS Superintendent Thomas Griffin, DOCCS Sergeant Robert Johaneman (sued as Johanni), DOCCS CO Ersan Kahyaoglu, OMH Dr. Uzma Qureshi (sued as Karuchee), DOCCS CO Richard Kelly, DOCCS Office of Special Investigations ("OSI") Inspector Hylton Pharr, OMH

Nurse Susanne Roessel, DOCCS CO Roggers, Officer Yitzchak Sudranski,[1] OSI Unit Chief Yaniris Urraca (sued as Urracia), and Deputy of Security Donald Wilkins, (collectively, "DOCCS Defendants"). Plaintiff also asserts a claim for deliberate indifference to medical needs as against private physician Dr. Anthony Ruvo ("Dr. Ruvo").

Presently before the Court is Dr. Ruvo's motion to dismiss the SAC and DOCCS Defendants' motion to partially dismiss the SAC. (*See* "Dr. Ruvo's Motion", ECF No. 258; "DOCCS Defendants' Motion", ECF No. 255.) For the following reasons, Dr. Ruvo's Motion is DENIED and DOCCS Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the SAC and assumed to be true for the purposes of both Dr. Ruvo's Motion and DOCCS Defendants' Motion.

Plaintiff is an inmate currently incarcerated at Upstate Correctional Facility. The events of this litigation arise out of several shocking violent incidents that allegedly occurred between 2015 and 2016 at Green Haven Correctional Facility ("Green Haven") including, among other things, the repeated anal assault of Plaintiff by correctional officers, threats to murder or further rape Plaintiff made by correctional officers in order to scare him into recanting adverse testimony in a separate case brought against correctional officers, verbal abuse directed at Plaintiff regarding his sexual preferences, and repeated denials or delays of medical treatment for profuse anal bleeding and the presence of foreign objects in his rectum that resulted in permanent injuries.

Sometime before the alleged incidents of rape and sexual assault, Plaintiff provided testimony in a lawsuit against certain correctional officers in support of another inmate. (SAC at

---

[1] On April 12, 2023, the Court granted Plaintiff's request to dismiss with prejudice all claims against Defendant Sudranksi. (*See* ECF No. 213.)

5.) As discussed further below, DOCCS Defendants allegedly engaged in extreme and violent measures to attempt to compel Plaintiff to recant his testimony. He thereafter sought to enter protective custody but alleges that his request was denied by order of Defendant Wilkins, and that his requests for assistance from Defendants Wilkins and Griffin were rejected. (*Id*. at 6.) He claims to have sought assistance from Qureshi, but that she told him only to "stop being gay" and to rescind his eyewitness testimony. (*Id*. at 7.)

## I.   The December 29, 2015 Sexual Assault

On December 29, 2015, Plaintiff was placed in a prison suicide intervention room at Green Haven, found a ripped sheet that had been deliberately placed there by unidentified prison officials, and attempted suicide by hanging with the ripped sheet which he fashioned as a noose. (*Id.* 8-9.) Meanwhile, Defendant Blot and other unidentified correctional officers watched Plaintiff's suicide attempt and laughed. (*Id.* at 9.) The noose snapped, Plaintiff fell to the ground, and Officer Blot entered the room, placed Plaintiff in metal mechanical restraints, cut the sheet from around his neck, stripped Plaintiff of his body wrap, flipped Plaintiff onto his stomach, and sat on Plaintiff's lower back. (*Id.*)

After restraining Plaintiff, Blot proceeded to digitally penetrate Plaintiff's anus (inserting his entire hand) so forcefully that Plaintiff screamed in agony, began to experience extensive internal bleeding from his rectum, and noticed blood fall down his testicles. (*Id.* at 9-10.) Blot then told Plaintiff that he should retract his aforementioned testimony against certain prison officials and keep quiet about the current incident or he would personally see to it that Plaintiff would be subjected to even worse sexual harassment. (*Id.* at 10.) Subsequently, Blot removed the blood-soaked mattress, sheet, and body wrap from the room, and attempted to mop up the blood on the floor before leaving Plaintiff in the room. (*Id.*)

3

Afterwards, non-party Nurse Barett arrived outside of Plaintiff's room, noticed that his mattress, sheets, and clothes were missing, and inquired about their whereabouts. (*Id.*) Plaintiff recounted his suicide attempt and the sexual assault. (*Id.*) Nurse Barett sent Plaintiff to the prison clinic to let the prison clinicians determine whether Plaintiff needed outside medical treatment. (*Id.* at 11.) Plaintiff also asked that Nurse Barett contact OSI and Barett said prison officials would do so. (*Id.*)

When Plaintiff arrived at the prison clinic, he described the sexual assault to an unnamed doctor, the doctor visually inspected Plaintiff's rectum, took a close look at his injuries, determined that Plaintiff should be sent to an outside hospital for medical treatment, and memorialized his observation that Plaintiff had rectal trauma. (*Id.*) While Plaintiff was awaiting transportation to the outside medical provider, Defendant Blot told Defendants Sudranski and Kahyaoglu (the officers that were going to transport Plaintiff) that he had been trying to stop Plaintiff's outside medical trip and "that fucking Barett was threatening to call state police if we didn't send him [Plaintiff] out at once, but we did the next best thing and a friend of the department had been contacted and he knows what to do to make this all go away." (*Id.*)

When Plaintiff arrived at Mount Vernon Hospital, he advised Dr. Ruvo that he'd been "violently sodomize[d] and was bleeding all the way from the prison to the hospital." (*Id.* at 12.) Dr. Ruvo, however, advised Plaintiff that he was only performing a lower body x-ray examination and that he could report any sexual related injuries to prison medical staff once he was sent back to the prison before laughing with the transporting correctional officers. (*Id.*) Dr. Ruvo also refused to examine the extent of Plaintiff's rectal injuries, offer any treatment to stem the rectal bleeding, or prescribe any pain relief. (*Id.* at 12-13.)

After returning to Green Haven, Plaintiff was in the care of OMH employees like Qureshi, Barta, and Gleason, all of whom refused to let receive medical treatment for his rectal bleeding. (*Id.* at 14.) They finally let Defendant Nurse Schmidt see Plaintiff, but she offered only a visual examination of Plaintiff, and "made it known" that if Plaintiff wanted actual treatment of his rectal injurie, he would have to rescind his testimony. (*Id*. at 16.)

## II.     The February 28, 2016 Sexual Assault

On February 28, 2016, Defendants Kelly and Roggers escorted Plaintiff from his keeplock cell to Green Haven's medication distribution location, realized that Plaintiff was "the homo who had ratted Defendant Blot out," and warned him that "he was about to find out [that] OSI work[s] for DOCCS especially against little homo rats like Plaintiff." (*Id.* at 21-22.)  Plaintiff alleges that he then drafted letters to Defendants Annucci and Urraca requesting protective custody but noted that the mail had not yet been picked up. (*Id*. at 22.) Plaintiff then drafted a letter to Defendant Griffin, alerting Griffin of Plaintiff's fear of Defendants Kelly and Roggers. (*Id*.) Plaintiff then gave these three letters to another inmate and asked the other inmate to mail the letters for him. (*Id*.)

Later that day, Roggers and Dillon rushed into Plaintiff's cell, punched Plaintiff in the face (resulting in a loose tooth and black-eye), pushed Plaintiff on the bed, and used arm restraints to immobilize Plaintiff even though he "never attempted to resist them." (*Id.* at 22-23.)  After he was immobilized, Kelly came into the cell, stripped Plaintiff naked, and forced a battery and glass thermometer into Plaintiff's rectum," while punching and insulting him. (*Id.* at 23.)  Plaintiff's preexisting rectal injuries were aggravated causing him extreme pain and bleeding.  (*Id.*)

Afterwards, DOCCS personnel eventually noticed Plaintiff's suffering and initially called for a medical team and OSI staff.  (*Id.* at 24.) However, when Plaintiff advised Defendant Bucolo that he had been attacked by DOCCS officers, Bucolo called off the medical team and OSI staff,

called for janitorial staff to clean up the blood to conceal evidence from OSI, and ordered others to evacuate Plaintiff to the OMH so that no evidence would be memorialized about the assault and he would be deprived of medical treatment. (*Id.* at 25.)

Plaintiff alleges that he asked to go to medical, but that the sergeant, acting on orders from Defendants Griffin and Wilkins, sent Plaintiff to OMH. (*Id*. at 25). As Plaintiff was being escorted to the OMH, he spoke to Roessel and advised her that he was not suicidal or otherwise in need of mental health services, and requested medical treatment (preferably from an outside hospital) to attend to rectal injuries and the presence of two foreign objects lodged in his rectum. (*Id.* at 26.) Plaintiff claims the officers would not take him to medical unless he blamed another inmate for his alleged attack. (*Id*. at 25.) Plaintiff was then allegedly sent to a strip room where one of the objects was removed from his rectum. (*Id*. at 27.)

III.    **The September 5, 2016 Assault**

On September 5, 2016, Plaintiff was aroused from his slumber by loud voices arguing outside his room.  (*Id.* at 36.)  Defendant Johaneman and a nurse, subsequently identified as Defendant Cody, were arguing with respect to Johaneman's attempts to enter Plaintiff's room in a manner that did not conform to the ongoing safety video order.  (*Id.*)  Despite Plaintiff's attempts to convince Cody to either prevent Johaneman from entering or to seek help, Cody eventually permitted Johaneman to enter Plaintiff's room without video surveillance.  (*Id.*)  Cody allegedly realized Plaintiff was endangered but did not seek help.  (*Id.* at 37.)  Johaneman entered Plaintiff's room along with Defendant Freeman—a correctional officer with an alleged history of violence against inmates and sexual aggression against female co-workers—and proceeded to punch Plaintiff in the face.  (*Id.*)  After pummeling Plaintiff, Freeman violently raped him and placed a metal object in Plaintiff's rectum. (*Id*. at 37-38.)

Afterward, Plaintiff alleges Defendants Pharr and Urraca failed to properly investigate his claim that he had been physically and sexually assaulted when Defendant Pharr arrived at his cell the next day. (*Id.* at 40-41). According to Plaintiff, Defendant Pharr admitted that Plaintiff had been raped and had a foreign object in his rectum but refused to send Plaintiff to an outside hospital after speaking to Urraca. (*Id.* at 41). Plaintiff alleges that Defendant Urraca then ordered Defendant Pharr to write Plaintiff a misbehavior report. (Id.). After Defendant Pharr left, a nurse contacted Defendant Bentivegna when she allegedly saw blood in Plaintiff's cell. (*Id.*). Plaintiff allegedly informed Defendant Bentivegna about the physical and sexual assault and that a metal object had been inserted in his rectum, but Bentivegna refused to send Plaintiff to an outside hospital or to a rectal specialist because Plaintiff is gay. (*Id.*).

Based on the above, in connection with the December 2015 Assault, Plaintiff asserts failure to protect claims against Annucci, Griffin, and Wilkins; an excessive force claim against Blot; an assault claim against Blot; retaliation claims against Blot, Sudranski, and Kahyaoglu; and a deliberate indifference claim against Dr. Ruvo. (*Id.* at 13-14.)

Regarding the aftermath of the December 2015 Assault, Plaintiff asserts deliberate indifference claims against Barta, Qureshi, Gleason, and Schmidt; retaliation claims against Barta, Qureshi, Gleason, and Schmidt; and failure to protect claims against Annucci, Griffin, and Urraca. (*Id.* at 17, 21.)

In connection with the February 2016 Assault, Plaintiff asserts deliberate indifference claims against Bucolo, Roessal, Griffin, Wilkins, Kelly, Dillon, Roggers, and all John Doe Officers assigned to observe and assist in the inspection of Plaintiff on February 28, 2016; and hate crime, sexual assault, and excessive force claims against Kelly, Dillon, Roggers, all John Doe Officers

assigned to observe and assist in the inspection of Plaintiff on February 28, 2016, and Bucolo. (*Id.* at 30.)

Finally, in connection with the September 2016 Assault, Plaintiff asserts a deliberate indifference claim against Urraca, Pharr, Bentevigna, Schmidt, Barta, Qureshi, and Gleason; failure to protect claims against Annucci, Urraca, Griffin, Wilkins, Cody, and Johaneman; and excessive force and assault claims against Freeman and Johaneman. (*Id.* at 41-42.)

Plaintiff seeks both damages and injunctive relief. (*Id.* at 43-44.)

## II.     Procedural History

Plaintiff, proceeding *pro se*, initially brought this action on November 28, 2018. (ECF No. 1.) On February 10, 2021, Dr. Ruvo and DOCCS Defendants filed respective motions to dismiss Plaintiff's then-operative complaint. By Opinion and Order dated September 28, 2021, the Court granted Dr. Ruvo's motion and granted in part and denied in part the DOCCS Defendants' motion to dismiss. (*See* ECF No. 110.)

On December 18, 2023, DOCCS Defendants submitted their memorandum of law in support of their motion to partially dismiss the Amended Complaint ("DOCCS' MoL", ECF No. 256) and reply memorandum in further support of their motion (ECF No. 257). On December 21, 2023, Dr. Ruvo submitted a memorandum in support of his motion to dismiss (ECF No. 260) and reply memorandum in further support of his motion (ECF No. 261).

Despite being given numerous extensions to serve his opposition papers, Plaintiff failed to serve a timely opposition. (*See* ECF No. 247 (noting that an extension until December 7, 2023 was "the FINAL extension of time for Plaintiff to serve opposition papers").) Plaintiff served a belated opposition on January 18, 2024 (ECF No. 267), which the Court will not consider for failure to comply with the Court's Order (ECF No. 247).

## LEGAL STANDARD

### I.      Rule 12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the Court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. *See* Fed. R. Civ. P. 12(b)(1). Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020); *see also Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (standing is "threshold matter" in determining district court's jurisdiction to hear case). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the complaint as true. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

### II.     Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for

the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

### I.   Newly Asserted Claims

Per the Court's previous Opinion on his First Amended Complaint, Plaintiff was granted leave to amend, but only for the limited purpose of repleading those claims that were dismissed without prejudice, namely: (1) Eighth Amendment deliberate indifference to medical needs claims against Defendants Blot, Qureshi, Gleason, Kahyaoglu, Sudranski, and Dr. Ruvo; (2) Eighth Amendment failure to protect claims against Defendants Griffin, Wilkins, and Pharr; and (3) official liability claims relating to injunctive relief. (*See* ECF No. 110 at 41.) Plaintiff did not subsequently seek, and was not granted, leave to amend his complaint to add any new defendants or claims to the action. Nevertheless, the SAC contains the following novel claims:

- Claims against Nurse Schmidt (*see, e.g.* SAC at 17)

- A claim under New York's hate crime law (*Id.* at 30)

- A First Amendment retaliation claim against Defendant Barta. (*Id.* at 17, 21)

- Eighth Amendment deliberate indifference to medical needs claims against Defendants Urraca, Pharr, and Schmidt. (*Id.* at 41.)

- An Eighth Amendment excessive force claim against Defendant Bucolo (*Id.* at 30)

- An Eighth Amendment failure to protect claim against Defendant Johaneman (*Id.* at 42)

10

- Eighth Amendment deliberate indifference to medical needs claims against Defendants Kelly, Dillon, and Roggers (*Id.* at 30)[2]

"The Court has inherent authority 'to dismiss claims that exceed a leave to amend.'" *Javier v. Russo*, No. 21 CV 7097 (VB), 2024 WL 1891197, at *5 (S.D.N.Y. Apr. 30, 2024) (quoting *Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013)). The Second Circuit has recognized that "[d]istrict courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 Fed.Appx. 40, 43 (2d Cir. 2012) (summary order); *see also Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2012 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013) (dismissing claims newly added to an amended complaint where those claims exceeded the scope of the court's leave).

As noted above, the SAC, which was filed nearly three years after this suit was commenced, contains numerous new claims and a new defendant. Accordingly, these new claims and defendant are dismissed with prejudice because they are not properly before the Court. *See, e.g., Willett v. City of New York,* No. 94 CV 3873, 1997 WL 104769, at *2 (E.D.N.Y. Feb. 18, 1997) (refusing to consider claims raised by *pro se* plaintiff in amended complaint which exceeded scope of leave to amend).

---

[2] The DOCCS Defendants additionally contend that the SAC alleges novel Eighth Amendment failure to provide medical care claims against Defendants Barta, Qureshi, and Gleason with respect to the December 2015 Incident, (DOCCS Defs.' MoL at 12), but these claims do not exceed the scope of the Court's previous Order, which granted Plaintiff permission to replead Eighth Amendment deliberate indifference to medical needs claims against Defendants Qureshi and Gleason, (*see* ECF No. 110 at 41). In addition, Plaintiff's deliberate indifference claim against Defendant Barta explicitly survived the previous motion to dismiss and is simply reasserted here, in the operative complaint. (*See id.* at 42.)

II.     **Whether Defendant Dr. Ruvo Qualifies as a State Actor**

As a private individual, Dr. Ruvo can only be liable pursuant to Section 1983 to the extent

that it is appropriate to treat him as a state actor in his provision of medical care to Plaintiff. Courts

have sometimes found non-public medical providers to be state actors when they provide inmates

with medical treatment outside of a prison pursuant to a contract. *See, e.g.*, *Rodriguez v. Mount

Vernon Hosp.*, No. 09-CV-5691, 2010 WL 3825736, at *4 (S.D.N.Y. Sept. 7, 2010) (determining

that the plaintiff's proposed amended complaint would not be futile when it sought punitive

damages from an "outside physician who work[ed] for an outside hospital that [DOCCS] ha[d] a

contract with to render services to its inmates" because "a doctor may still be considered a state

actor as long as the doctor was obligated, even if indirectly, to provide medical services to state

inmates" (citations, record citation, and quotation marks omitted)), *adopted by* 2010 WL 3825715

(S.D.N.Y. Sept. 30, 2010), *aff'd*, 2010 WL 3959602 (S.D.N.Y. Oct. 5, 2010); *Garraway v. Artuz*,

No. 01-CV-3126, 2002 WL 221584, at *6 (S.D.N.Y. Feb. 13, 2002) (determining that a private

physician was a state actor when his employer was "a party to a contract that require[d] him to

provide medical services to prisoners in the State of New York"). By contrast, courts have held

that the provision of medical care by a private hospital to an individual in custody on the same

terms as the hospital would provide to the public at large does not satisfy the state action test, *i.e.*,

when a private doctor is alleged to provide services for an inmate outside of a correctional facility

but there is no allegation that the medical services were provided pursuant to a contract or state

compulsion. *See Illescas v. Annucci*, No. 21-CV-8473 (NSR), 2022 WL 17539696, at *3 (S.D.N.Y.

Dec. 7, 2022)*; see also Morse v. City of N.Y.*, No. 00-CV-2528, 2001 WL 968996, at *8 (S.D.N.Y.

Aug. 24, 2001) (noting that fact that plaintiff was brought to hospital from police custody was

insufficient to transform private hospital and staff into state actors for Section 1983 purposes).

Here, Dr. Ruvo is alleged to have treated Plaintiff at a private hospital pursuant to a contract with DOCCS through which Defendant Dr. Ruvo would "be compensated" for the provision of medical services. (*See* SAC at 13.) According to Plaintiff, Dr. Ruvo was "bo[u]nd to treat [him] by means of contract." (*Id.*) "[S]uch a relationship has been repeatedly held to turn the private entity into a state actor for purposes of § 1983." *See Williams v. Kepro*, No. 921CV302TJMCFH, 2023 WL 5806418, at *8 (N.D.N.Y. Aug. 8, 2023), *report and recommendation adopted*, No. 921CV302TJMCFH, 2023 WL 5806328 (N.D.N.Y. Sept. 7, 2023) (collecting cases); *see also Brown v. Pangia*, No. 11-CV-6048, 2014 WL 2211849, at *3 (S.D.N.Y. May 27, 2014) ("In cases where a private physician was found to have acted under color of state law, the physician either had a contract with the state or otherwise willfully agreed to treat incarcerated patients.") Because Dr. Ruvo performed his work pursuant to a contract with DOCCS, he can fairly be considered a state actor in the context of his treatment of Plaintiff. *See Rodriguez*, 2010 WL 3825736, at *4; *Garraway*, 2002 WL 221584, at *6. Accordingly, Dr. Ruvo's motion to dismiss Plaintiff's claims against him on this basis is denied.

## III.   Deliberate Indifference to Medical Needs

### A.   Legal Framework of Deliberate Indifference Claims

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII. This includes depriving prisoners of their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 200 (1989)). For a plaintiff to establish that a prison official violated the Eighth Amendment, "(1) the alleged deprivation must, as an objective matter, be 'sufficiently serious,' [*i.e.*, the 'objective prong'] and (2) the alleged perpetrator—ordinarily a prison official—must possess a 'sufficiently culpable state

of mind.' [*i.e.*, the 'subjective prong']." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To determine whether a deprivation of medical care is "sufficiently serious," the Court must "(1) determine whether the medical care was inadequate, and, (2) if so, '[ ] examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.'" *Taft v. Fricke*, No. 9:17-CV-0346 (GTS/CFH), 2019 WL 5197180, at *7 (N.D.N.Y. July 26, 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. Oct. 27, 2006)). To assess the adequacy of care a claimant received, the Court must determine whether the prison official provided "reasonable care." *Salahuddin*, 467 F.3d at 279.

If the claimant is alleging the prison official failed to provide any treatment at all, "courts examine whether the inmate's medical condition is sufficiently serious." *Id.* at 280. To establish that a medical condition was "sufficiently serious" a plaintiff must allege "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Coke v. Med., Dep't of Corr. & Cmty. Supervision*, 17 Civ. 0866 (ER), 2018 WL 2041388, at *3 (S.D.N.Y. Apr. 30, 2018). There are several factors that a court may consider when deciding whether a medical condition is "sufficiently serious," including "chronic and substantial pain or the presence of a medical condition that significantly affects an individual's daily activities." *Salgado v. DuBois*, 17-cv-6040 (NSR), 2019 WL 1409808, at *5 (S.D.N.Y. Mar. 28, 2019).

For the subjective prong, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" that would result from his or her act or omission. *Jones v. Avanzato*, No. 14-cv-2044 (NSR), 2016 WL 183565 at *3 (S.D.N.Y. Jan. 13, 2016) (citing *Farmer*, 511 U.S. at 837). Medical malpractice "does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that

14

evinces a conscious disregard of a substantial risk of serious harm.'" *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted). Therefore, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"Although deliberate indifference claims are most often asserted against medical personnel," *Bookman v. Lindstrand*, No. 15-CV-1542, 2018 WL 3121688, at *12 (N.D.N.Y. Feb. 14, 2018), *report and recommendation adopted*, 2018 WL 1470585 (N.D.N.Y. Mar. 26, 2018), "non-medical personnel may [also] be found to have engaged in deliberate indifference," *Haynes v. City of New York*, No. 19-CV-1925, 2020 WL 4926178, at *14 n.28 (S.D.N.Y. Aug. 20, 2020) (citing *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018)). That Plaintiff has accused correctional officers of deliberate indifference does not, however, alter the relevant analysis: "The same standards apply to a claim of deliberate indifference to serious medical needs on the part of nonmedical prison personnel." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) (quoting *Hodge v. Coughlin*, No. 92-CV-622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995)); *see also Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *11 (S.D.N.Y. Feb. 16, 2017) (observing that although certain defendants were "not medical personnel," an incarcerated plaintiff's deliberate-indifference claims against them were "nonetheless evaluated under the 'deliberate indifference' framework of the Eighth Amendment"). Courts in this Circuit have frequently observed that to establish a deliberate indifference claim against nonmedical personnel, "a plaintiff must prove that [the] nonmedical prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made

15

his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Haynes*, 2020 WL 4926178, at *14 n.28 (quotation marks and alteration omitted) (quoting *Roundtree*, 2018 WL 1586473, at *6); *Crandell v. Ross*, No. 19-CV-6552, 2020 WL 134576, at *4 (W.D.N.Y. Jan. 13, 2020) (reciting the same standard); *Young v. Choinski*, 15 F. Supp. 3d 194, 200 (D. Conn. 2014) (same).  "At a minimum, there must be at least some allegations of a conscious or callous indifference to a prisoner's rights."  *Hodge*, 1994 WL 519902, at *11 (citation omitted).

B.    Denial of Appropriate Medical Treatment After the December 29, 2015 Assault[3]

Liberally construed, Plaintiff alleges that, after he was released from Mount Vernon Medical Center following the December 29, 2015 assault, Defendants Barta, Qureshi, and Gleason were deliberately indifferent to a sufficiently severe medical condition by failing to either provide or obtain any medical assistance for Plaintiff's apparent rectal injuries. In particular, Plaintiff contends that Barta, Qureshi, and Gleason "ignored [his] request day after day to be sent to the medical clinic" (SAC at 14) despite suffering "untreated rectum injuries and bleeding" (*id.* at 15). After going on a hunger strike to protest his lack of treatment, Plaintiff was finally examined by a nurse in front of Barta, Qureshi, and Gleason, though even then the nurse refused to "give [Plaintiff] something for the extre[me] pain of [his] rectum injuries." (*Id.* at 16.)

As stated in the Court's prior Opinion, "[t]here is little serious dispute that Plaintiff's visible and profuse rectal bleeding constituted a serious medical need." (ECF No. 110 at 23.) "'[T]he severity of Plaintiff's apparently visible injuries,' including [rectal] bleeding . . . can

---

[3] The Court previously dismissed Plaintiff's claims against Defendants Blot, Kahyaoglu, Gleason, and Qureshi with respect to his treatment in the immediate aftermath of the alleged assault on December 29, 2015. (ECF No. 110 at 20, 23-25.) The SAC only alleges denial of medical treatment against Defendant Ruvo with regard to the December 2015 assault, not Defendants Blot, Kahyaoglu, Gleason, or Qureshi. (*See* SAC at 14.) As a result, all claims against any DOCCS Defendants based on a denial of medical care in the immediate aftermath of the December 2015 assault are dismissed with prejudice.

support an inference of deliberate indifference at this early stage of litigation." *Hernandez v. City of New York*, No. 14-CV-192 (JPO), 2017 WL 2242965, at *5 (S.D.N.Y. May 22, 2017) (quoting *Betts v. Rodriquez*, No. 15-CV-3836 (JPO), 2016 WL 7192088, at *5 (S.D.N.Y. Dec. 12, 2016)); *see also Holness v. Gagne*, No. 3:18-CV-01752 (JAM), 2019 WL 6683058, at *5 (D. Conn. Dec. 6, 2019) ("Holness's alleged swallowing of a sharp blade in May, which resulted in a period of abdominal pain and rectal bleeding, was obviously a serious medical condition that deserved to be treated at the time."); *Petty v. City of New Britain*, 2018 WL 587321, at *3 (D. Conn. 2018) (rectal bleeding is a serious medical need)."

Having found that Plaintiff's medical condition was sufficiently serious, the Court moves to the second, subjective prong of the deliberate indifference analysis, namely whether Defendants Barta, Qureshi, and Gleason "kn[e]w[ ] of and disregarded an excessive risk to inmate health or safety" that would result from their failure to act in response to Plaintiff's rectal bleeding. *See Jones*, 2016 WL 183565 at *3. The Court holds that "[c]ausing [Plaintiff] to wait for prolonged periods before receiving recommended medical treatment…can—according to the facts alleged here—be understood as entailing deliberate indifference on the part of" Defendants. *See Hernandez*, 2017 WL 2242965, at *5. Plaintiff's allegations succinctly and sufficiently state a deliberate indifference claim: Plaintiff alleges that (1) he repeatedly told Barta, Qureshi, and Gleason "of his condition and the 'excruciating pain,'" he was suffering, (2) "that these COs were responsible for his custody and care," and (3) that they "failed to take appropriate action to get [Plaintiff] the medical help he required, despite knowledge of the risk to his health." *See id.* And "[w]hile further factual development may reveal more detail about the knowledge and involvement—or lack thereof—of Defendants," Barta, Qureshi, and Gleason, "at this stage, the

Court is obligated to read the [SAC] liberally and, as such, finds that [Plaintiff] has alleged enough about their knowledge and subsequent inaction to meet the subjective requirement." *See id.*

Accordingly, DOCCS Defendants' motion to dismiss Plaintiff's claims of deliberate indifference against Defendants Barta, Qureshi, and Gleason is denied in light of their apparent failure to obtain (or delay in obtaining) medical treatment to address Plaintiff's rectal bleeding following the December 29, 2015 assault.

C.      Denial of Medical Care in Connection with September 5, 2016 Assault

Plaintiff alleges denial of medical treatment in connection with the September 5, 2016 assault against Defendants Urraca, Pharr, Bentivegna, Schmidt, Barta, Qureshi, and Gleason. (SAC at 41-42.) As explained in Section I, *supra*, Plaintiff was not given leave to replead such a claim against Defendants Urraca, Pharr, and Schmidt. In addition, Defendants do not challenge the allegations against Defendant Bentivegna. (*See* DOCCS Defs.' MoL at 14.)[4] As a result, the Court will only consider the sufficiency of Plaintiff's allegations against Barta, Qureshi, and Gleason. Nowhere in the SAC does Plaintiff claim that Defendants Barta, Qureshi and Gleason were present or even made aware of the alleged assault in September 2016, and thus he fails to state how they violated his rights with regard to medical treatment. Given the many chances Plaintiff has had to plead this claim, the Court will dismiss with prejudice claims regarding the denial or delay of medical treatment with respect to the September 2016 assault as against Defendants Barta, Qureshi, and Gleason.

---

[4] DOCCS Defendants read the SAC as also asserting this denial of medical treatment claim in connection with the September 5, 2016 assault against Defendants Annucci, Griffin, and Wilkins (DOCCS Defs.' MoL at 14), but the Court reads the SAC as only stating failure to protect claims against Defendants Annucci, Griffin, and Wilkins. Accordingly, the Court does not address the DOCCS Defendants' arguments regarding those Defendants here.

**IV.**        **Failure to Protect**

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 831 (1994)).  This requirement includes a general "duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. Similarly, liability will arise for a prison official's failure to protect or intervene where he observes a fellow official using excessive force or has reason to know that excessive force will be used. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

However, not "every injury suffered by [a] prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  Prison officials can be held responsible for such harms only if they act with "deliberate indifference" to inmate safety.  *Hayes*, 84 F.3d at 620. The test for establishing deliberate indifference to inmate safety has an objective component and subjective component.  First, under the objective prong, plaintiffs must show that they were "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Second, under the subjective prong, plaintiffs must establish that the prison official acted with a "sufficiently culpable state of mind." *Id.*

To evaluate culpability under an Eighth Amendment deliberate indifference framework, a prison official must know that the plaintiff "face[d] a substantial risk of harm and he [or she] disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 842, 845).  The prison official need not be "aware[ ] of the specific risk to the plaintiff or from the assailant." *Warren v. Goord*, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008).  Rather, the risk may come from a "single source or multiple sources" and may be a risk that all prisoners in the plaintiff's position face. *Id.* (quoting *Farmer*, 511 U.S. at 843).

Plaintiff asserts a failure to protect claim against Defendants Annucci, Urraca, Griffin, Wilkins, Cody, and Johaneman in connection with the September 2016 Assault.[5] (SAC at 41-42.) As explained in Section I, *supra*, Plaintiff was not given leave to replead such a claim against Defendant Johaneman. In addition, Defendants do not challenge this claim as asserted against Defendants Annucci, Urraca, or Cody. (*See* DOCCS Defs' MoL at 16.) As such, the Court will limit its analysis of this claim to the allegations as pled against Defendants Griffin and Wilkins.[6]

Here, Plaintiff fails to allege that he informed Defendant Griffin and/or Wilkins about a specific fear of assault prior to the events of the September 2016, nor does he allege any reason why Defendants Griffin and Wilkins would have been aware of a substantial risk of Plaintiff incurring the assault. Accordingly, Plaintiff fails to state a failure to protect claim as against Defendants Griffin and Wilkins with respect to their conduct prior to the September 2016 Assault. Because this claim was previously dismissed by the Court (*see* ECF No. 110 at 33), this claim is dismissed with prejudice as asserted against Defendants Griffin and Wilkins.

## V.    Injunctive Relief

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents . . . that are, effectively, arms of a state."). State officials therefore cannot be sued in their official capacities

---

[5] DOCCS Defendants also read the SAC to state a failure to protect claim in connection with the February 2016 assault against Defendant Griffin, but the Court disagrees. (*See* DOCCS Defs.' MoL at 15.) Plaintiff makes clear that he only asserts a claim of deliberate indifference to his medical needs against Defendant Griffin (*see* SAC at 30), and so the Court will not consider DOCCS Defendants' arguments on this matter.

[6] DOCCS Defendants also read the SAC to assert a failure to protect claim against Defendant Pharr in connection with the September 2016 assault, but the Court disagrees. (*See* DOCCS Defs.' MoL at 15.) The SAC only includes a deliberate indifference to medical needs claim against Pharr (*see* SAC at 41), and so the Court will not consider DOCCS Defendants' arguments on this matter.

for retrospective relief, including damages, under Section 1983. *Will*, 491 U.S. at 71. Nonetheless, state officials can be subject to suit in their official capacities for injunctive or other prospective relief. *Id.* at 71 n. 10 ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State."); *Ex parte Young*, 209 U.S. 123 (1908). "[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)).

Here, Plaintiff seeks prospective injunctive relief in the form of a "preliminary and permanent injunction ordering Defendants Annucci and Urraca" to have all future allegations of sexual assault by staff "overseen by IG independent of OSI inspector." (SAC at 44.) With respect to Plaintiff's claim for injunctive relief, Plaintiff does not contend that an ongoing violation of federal laws is occurring. Instead, each of the underlying events giving rise to this action occurred years ago at a correctional facility where Plaintiff no longer resides. Accordingly, as pled, Plaintiff's request for injunctive relief is barred by the Eleventh Amendment. *See, e.g.*, *McKenna v. Dinapoli*, 2016 WL 7413490, * 5 (E.D.N.Y. Dec. 22, 2016) (holding that a request for "a permanent injunction enjoining and restraining the defendants from future retaliation against plaintiff and from future interference with [his] constitutionally protected right to his public pension[,]" is barred by the Eleventh Amendment because it did not allege an ongoing violation of federal law). The Court previously dismissed Plaintiff's claim for injunctive relief (ECF No. 110 at 35) and so dismisses it here with prejudice.

21

**CONCLUSION**

For the foregoing reasons, the Dr. Ruvo's motion to dismiss the Second Amended Complaint is DENIED and DOCCS Defendants' partial motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.

The Court **dismisses** the following claims with prejudice: (1) all claims against Nurse Schmidt; (2) all claims under New York's hate crime law; (3) the First Amendment retaliation claim in connection with the December 2015 Assault, against Defendant Barta; (4) the Eighth Amendment deliberate indifference to medical needs claims in connection with the September 2016 Assault against Defendants Urraca and Pharr; (5) the Eighth Amendment excessive force claim in connection with the February 2016 Assault against Defendant Bucolo; (6) the Eighth Amendment failure to protect claim in connection with the September 2016 Assault against Defendant Johaneman; (7) the Eighth Amendment deliberate indifference to medical needs claims in connection with the February 2016 Assault against Defendants Kelly, Dillon, and Roggers; (8) the Eighth Amendment denial or delay of medical treatment in connection with the September 2016 Assault claims against Defendants Barta, Qureshi, and Gleason; (9) the Eighth Amendment failure to protect claims in connection with the September 2016 Assault against Defendants Griffin and Wilkins; and (10) Plaintiff's claim for injunctive relief.

The following claims **survive**:

- in connection with the December 2015 Assault, (1) failure to protect claims against Annucci, Griffin, and Wilkins; (2) excessive force claim against Blot; (3) an assault claim against Blot; (4) retaliation claims against Blot and Kahyaoglu; and (5) a deliberate indifference claim against Dr. Ruvo.

22

- in the aftermath of the December 2015 Assault, (6) deliberate indifference claims against Barta, Qureshi, and Gleason; (7) retaliation claims against Qureshi and Gleason; and (8) failure to protect claims against Annucci, Griffin, and Urraca.

- in connection with the February 2016 Assault, (9) deliberate indifference claims against Bucolo, Roessal, Griffin, Wilkins, and all John Doe Officers assigned to observe and assist in the inspection of Plaintiff on February 28, 2016; and (10) sexual assault and excessive force claims against Kelly, Dillon, Roggers, and all John Doe Officers assigned to observe and assist in the inspection of Plaintiff on February 28, 2016.

- in connection with the September 2016 Assault, (11) deliberate indifference claim against Bentevigna; (12) failure to protect claims against Annucci, Urraca, and Cody; and (13) excessive force and assault claims against Freeman and Johaneman.

- (14) Plaintiff's claim for damages.

All Defendants are directed to answer the Second Amended Complaint by July 8, 2024. As this case has already been referred to Magistrate Judge Victoria Reznik for general pretrial purposes, the parties are directed to contact Judge Reznik within seven (7) business days of all Defendants filing an answer to the Second Amended Complaint to schedule a conference.

The Clerk of the Court is kindly directed to terminate Defendant Hylton Pharr from this action. The Court dismisses with prejudice all claims against Defendant Pharr. In addition, for the reasons outlined in the Court's April 26, 2024 Order resolving nearly identical motions by Plaintiff, Plaintiff's motion for injunctive relief, stay, and assignment of counsel is DENIED. (*See* ECF No. 273.) The Clerk of Court is kindly directed to terminate the motion at ECF No. 273.

Finally, the Clerk of Court is directed to terminate the motions at ECF Nos. 255 and 258, mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF, and show service on the docket.

Dated:   June 13, 2024                                        SO ORDERED:
         White Plains, New York

_____
          NELSON S. ROMÁN
        United States District Judge