UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Willie Bright,

                              Plaintiff,

            -against-

Anthony J, Annucci, et al.,

                            Defendants.
------------------------------------------------------------------X

18-cv-11111-NSR-VR

**ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

    During this litigation, the parties have accumulated numerous discovery issues in various stages of resolution. This Order memorializes those items, confirms whether they are still outstanding, and provides some interim deadlines for the parties to follow:

1. **Status of Appointment of Counsel** – On May 13, 2025, the Court entered an Order requesting appointment of pro bono counsel for Plaintiff and set a deadline of July 12, 2025, for any retained attorney to file a notice of appearance on Plaintiff's behalf. (ECF No. 347). The Court now extends that deadline until **August 22, 2025.** If pro bono counsel does appear before August 22nd, the Court will entertain any reasonable request to extend the deadlines outlined in this Order, as necessary.

2. **Plaintiff's deposition** – The rescheduling of Plaintiff's deposition will be deferred until after the deadline of any retained attorney to file a notice of appearance on Plaintiff's behalf. After that time, the Court will schedule a status conference with the parties to discuss scheduling.

1

3. **Plaintiff's witness list** – Defendants confirmed in their April 3, 2025, letter that Plaintiff provided a witness list and that they would address the list at his deposition. The Court considers this issue resolved.

4. **Plaintiff's OSI records** – Plaintiff alleges that his Offender Rehabilitation Coordinator ("ORC") "counsel" named "Ms. William" was never given the OSI records that Plaintiff cannot possess personally. (ECF No. 340 at 2–3). He also reiterates that Ms. Williams was only given one investigation report comprised of seven pages, and that there should be a report for each of his three alleged incidents. (*Id.*) Defendants assert that there are not three separate reports and that the sole report provided concerns all three alleged incidents. (ECF No. 321 at 2). They also assert that they have produced every page of the OSI records to Plaintiff's facility. For now, the Court considers this issue resolved, unless and until further discovery reveals that other OSI records/reports exist beyond those already produced.

5. **Plaintiff's ability to view documents at his facility** – Plaintiff asserts that he has not been able to review the OSI records that have been produced. (ECF Nos. 319 at 2–3; 340 at 3–4). He alleges that his ORC counsel has informed individuals at the facility that there is no space in the "ORC area" for him to review the documents and take notes. Plaintiff states that his ORC counsel suggested he be allowed to use the Law Library, but that his request to do so was denied. (ECF No. 340 at 3–

2

4). He also explains that the Law Library is being used heavily and that he is struggling to find a time to use it. (*Id.*; ECF No. 344 at 6–7). In response, Defendants confirmed with Plaintiff's facility that he can access the OSI records, but he apparently refuses to view them in the ORC office and instead demanded to view them in the Law Library, which ORC denied. (ECF No. 338). Plaintiff is directed to review the OSI records in the ORC office, if the records are made available to him there, and report back to the Court if his request to do so was denied.

6. **Production of OMH documents** – Plaintiff alleged in his April 30, 2025, letter that he was being deprived of access to his Office of Mental Health ("OMH") records and some OMH logbooks. (ECF No. 344 at 2–3). The DOCCS Defendants maintain that these items are privileged under state law, and they cannot obtain or disclose them without obtaining a fully executed release form authorization, which Plaintiff refuses to sign. (ECF No. 346 at 2). If Plaintiff wants to obtain these documents, he has two options: (1) he can request the records from OMH himself by sending the agency a letter with a copy of his birth certificate, or (2) he can provide a signed authorization form to counsel for the DOCCS Defendants so that she can make the request. Plaintiff must either make the request himself or provide a signed authorization form as soon as possible, and in any event, no later than **August 29, 2025**. Until he does,

3

these records will not be produced by the DOCCS Defendants, and the Court considers this issue resolved.

7. **Production of DOCCS logbooks** – Plaintiff alleged that the DOCCS Defendants failed to produce DOCCS logbooks, which are different from the OMH logbooks. (ECF No. 344 at 2–3). The DOCCS Defendants provided courtesy copies of all documents produced thus far, and they amended their response to include additional DOCCS Suicide Watch logbooks discovered recently. (ECF No. 338 at 2). Nevertheless, Plaintiff continues to assert that the DOCCS Defendants have failed to produce requested logbooks. (ECF Nos. 349 at 1; 352 at 4). For now, the Court considers this issue resolved, unless and until further discovery reveals that other DOCCS logbooks exist beyond those already produced.

8. **DOCCS Defendants' disciplinary records** – In his April 14, 2025, letter, Plaintiff alleged that this Court refused to compel the DOCCS Defendants to produce all relevant disciplinary records. (ECF No. 340 at 4). But Plaintiff never previously mentioned a desire or request for any disciplinary records. If Plaintiff wants the DOCCS Defendants to produce any relevant disciplinary records, he must serve the DOCCS Defendants with a request for those documents. Any such request should be served by no later than **August 29, 2025**.

9. **Plaintiff's latest interrogatories** – Plaintiff alleged that he sent a "second round" of interrogatories to the DOCCS Defendants, which they

4

have failed to answer. (ECF No. 344 at 2). The DOCCS Defendants dispute this allegation and contend that they never received any second round of questions. (ECF No. 346 at 3). Plaintiff is directed to serve a copy of these latest interrogatories on the DOCCS Defendants by no later than **August 29, 2025**, and submit a copy to the Court to keep it informed.

10. **CD-ROM Issue** – Plaintiff's facility experienced issues trying to play a CD-ROM produced by the DOCCS Defendants that contained recordings of Plaintiff's phone calls, which apparently could not be played without the use of proprietary software. The DOCCS Defendants informed the Court that they were working with their IT department to remedy the issues Plaintiff experienced. By no later than **August 29, 2025**, the DOCCS Defendants are directed to provide an update on whether the CD-ROM issue is resolved or how soon they expect to resolve it.

11. **Surveillance Camera Video Evidence** – Plaintiff has repeatedly asserted that there is surveillance camera video evidence of his alleged assaults. (ECF Nos. 340 at 5; 344 at 4; 345 at 2–3; 349 at 5–6; 352 at 1). And he points to the existence of a camera above his cell to support his assertions. (ECF No. 340 at 5). On April 7, 2025, the DOCCS Defendants were directed "to provide an affidavit from a knowledgeable witness explaining what, if any, surveillance camera video exists for any of the incidents at issue in this action." (ECF No. 339). Shortly thereafter, the

5

DOCCS Defendants provided an affidavit from a witness familiar with the facility and its camera system, in which he averred that he searched for any surveillance camera video and was unable to locate any video from the dates of Plaintiff's alleged incidents. (ECF No. 341; 341-2). The DOCCS Defendants clarified that cameras exist, but they are only capable of monitoring the area in real time, they do not record video. (ECF No. 346 at 2). For now, the Court considers this issue resolved, as it cannot compel the production of video that DOCCS Defendants say, after a reasonable search, does not exist.

12. **Handheld Camera Video Evidence** – The DOCCS Defendants told the Court in April 2025 that they intended to produce to Plaintiff multiple CD-ROMs containing five videos taken by facility staff using handheld cameras. (ECF No. 341; 341-2). Unlike the CD-ROM with Plaintiff's call logs and prior versions of these videos, these apparently do not require any proprietary software. By no later than **August 29, 2025**, the DOCCS Defendants are directed to confirm whether Plaintiff received these CD-ROMs.

**SO ORDERED.**

DATED:   White Plains, New York
         8/4/2025

_____
VICTORIA REZNIK
United States Magistrate Judge