**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
Willie Bright,

                                    Plaintiff,                                          18-cv-11111-NSR-VR

              -against-                                                         **ORDER**
Anthony J. Annucci et al.,

                                    Defendant.
-------------------------------------------------------------------X

**VICTORIA REZNIK, United States Magistrate Judge:**

      In February 2026, Plaintiff's counsel raised a dispute over the DOCCS

Defendants' refusal to produce documents they deemed confidential. (ECF No. 389).

The parties had already entered into a protective order that allowed Plaintiff's counsel

to view confidential documents (ECF No. 367), but the remaining question was whether

Mr. Bright could keep those documents after his pro bono representation ended at the

close of paper discovery and he returned to his pro se status. (ECF No. 392 at 1).

Plaintiff's counsel argued that all disputed documents should be produced to Mr. Bright

once he resumed representing himself. The DOCCS Defendants opposed that request.

(*Id.*). The Court directed the DOCCS Defendants to submit the confidential documents

for in camera review (ECF No. 395), and they did so shortly thereafter.

      The documents submitted for in camera review consist of three exhibits (A, B,

and C).[1] Exhibit A is the "Standards of Incarcerated Individual Behavior" document

from DOCCS' "Incarcerated Individual Rules, Penalties[,] and Outline Procedures."

---

[1] Exhibits B and C have Bates numbers, so all citations will refer to the exhibit and associated Bates number. Exhibit A does not have Bates numbers, so any citations will refer to the exhibit and page number. Exhibit A also includes two copies of the rulebook, one in English and one in Spanish, and the Spanish language version repeats the page numbering of the English version. Thus, any citation will only refer to the English version's page number.

1

(Ex. A at 1).[2] It is a "rulebook" given to prisoners that advises them on "the rules of conduct applicable to them while incarcerated" at a DOCCS facility. (*Id.*).

Exhibit B contains four DOCCS Directives: (1) No. 4004 – Unusual Incident Report, (2) No. 4008 – Watch Commander Log, (3) No. 4091 – Logbooks, and (4) No. 4944 – Use of Physical Force. Exhibit C consists of about 160 pages of emails and attachments. The emails span a wide range of dates and were sent by both parties and nonparties. The Court addresses Exhibits B and C in turn.

## DISCUSSION

### I. The DOCCS Directives (Exhibit B)

The DOCCS Defendants argue that Mr. Bright should be prohibited from possessing any copies of Directive Nos. 4004 and 4008, whether redacted or unredacted, because they "show[] how DOCCS run[s] command operations through the Watch Commander." (Defs.' Cover Letter at 2). Directive No. 4004 discusses the "response and notification time" for certain incidents, whereas Directive No. 4008 details how the Watch Commander Log "is a record of events and activities." (*Id.* at 2–3). According to the DOCCS Defendants, an incarcerated individual with that knowledge could "compromise the safety and security" of a DOCCS facility. (*Id.*). They also argue that Mr. Bright should be allowed to keep only redacted copies of Directive Nos. 4091 (Logbooks) and 4944 (Use of Physical Force), which they are willing to produce. (*Id.* at 2). In their view, redactions are necessary because those Directives contain information about procedures for use-of-force and for counting and searching incarcerated

---

[2] Based on the cover letter submitted by the DOCCS Defendants, Exhibit A is not a document at issue in this dispute. It was only provided to provide context for the Court in reviewing Exhibit B.

individuals, which could be used to anticipate DOCCS' actions and "circumvent detection." (*Id.*).

DOCCS Directives may be withheld from an incarcerated pro se plaintiff when they contain "clearly sensitive information." *Bishop v. Emerson*, 9:24-cv-1549 (DNH/CBF), 2026 WL 861151, at *2–3 (N.D.N.Y. Mar. 30, 2026) (declining to compel production of DOCCS Directive No. 4900 because it contained "highly sensitive" information about "security in and around gates, gate areas, and secure posts"); *cf. Roland v. Hill*, 17-CV-6524-FPG-JWF, 2019 WL 1128842, at *2 (W.D.N.Y. Mar. 12, 2019) (ordering production of DOCCS Directive No. 2111 about reporting employee misconduct because it was relevant to plaintiff's excessive force claims). But a generalized assertion that disclosure may affect institutional safety is not enough. The party opposing disclosure must identify a concrete security concern. *See Culbreath v. Griffin*, 17 CV 3406 (KMK) (LMS), 2018 WL 11299396, at *5–6 (S.D.N.Y. Mar. 1, 2018).

That standard justifies withholding Directive No. 4004 (the Unusual Incident Report), but not the other three Directives at issue. Directive No. 4004 contains the kind of "highly sensitive" operational information that may be properly withheld from an incarcerated pro se litigant. It explains how unusual incidents are classified and reported, identifies the channels through which reports are made, and specifies the time frames for reporting or escalating particular incidents. (Ex. B at D_002807–22). It also gives examples of incidents and ties them to corresponding response and notification deadlines. (*Id.* at D_002807–09). That is not mere recordkeeping. It is a practical account of how the facility responds to emergencies and disruptive events, and how quickly it must do so. That information poses an obvious security risk. An incarcerated individual who knew the reporting and escalation timelines could use

them to anticipate, evade, or frustrate an institutional response. That is enough to create a genuine security concern. *See Bishop*, 2026 WL 861151, at *2–3. Thus, the DOCCS Defendants need not produce Directive No. 4004 to Mr. Bright.

But the same cannot be said of Directive Nos. 4008, 4091, and 4944. Directive No. 4008 (the Watch Commander's Log) requires the maintenance of a logbook and identifies the categories of information that must be recorded in it. (Ex. B at D_002825–26). The DOCCS Defendants say the Directive contains sensitive information about restricted keys, front gate procedures, counts, and alarm testing. But that characterization overstates what the document says. The Directive chiefly identifies what must be logged; it does not meaningfully disclose how those matters are operationally carried out. Knowing that certain matters must be recorded in a logbook is not the same as knowing how the facility classifies and responds to unusual incidents. To the extent isolated references implicate limited security concerns, such as references to when counts are conducted and when civilian personal alarms are tested, those limited portions may be redacted. But wholesale withholding is not warranted.

Directive No. 4091 (Logbooks) is much the same. It requires the maintenance of logbooks for various housing units and specifies the types of entries that must be made about matters like count and search. (Ex. B at D_002868–70). That is a recordkeeping directive. It does not appear to reveal the mechanics or timing of the facility's response to unusual incidents, which is what makes Directive No. 4004 sensitive. The DOCCS Defendants say they are willing to produce Directive No. 4091 with limited redactions for count and search procedures, which could be used by an incarcerated individual to

circumvent detection.[3] Those limited portions may be redacted, but the rest must be produced in full.

Directive No. 4944 (Use of Physical Force) also does not warrant wholesale withholding. It sets out the rules governing the use of physical force in a DOCCS facility and the manner in which such incidents are documented. (Ex. B at D_002915– 21). That subject matter is at least arguably relevant to Mr. Bright's claims. And unlike Directive No. 4004, Directive No. 4944 does not disclose response deadlines that could be used to anticipate or manipulate institutional reactions to unfolding events. Still, as the DOCCS Defendants point out, the Directive does include policy and procedure about when security staff may use certain departmental weapons and when deadly physical force may be used. That information is operational enough to raise a legitimate concern, because it could be used to anticipate DOCCS practices and plan countermeasures. Thus, the DOCCS Defendants may redact these limited provisions, which in any event are irrelevant to Mr. Bright's claims. *See Woodward v. Mullah*, No. 08-CV-463(A)(M), 2009 WL 4730311, at *3–4 (W.D.N.Y. Dec. 4, 2009) (ordering defendant correctional officers to produce version of Directive No. 4944 with sections on "weapons, firearms[,] and deadly force procedures" redacted after concluding they were unrelated to plaintiff's claims and "interest in maintaining prison security outweigh[ed] plaintiff's need for an unredacted copy of Directive").

---

[3] In their cover letter, the DOCCS Defendants stated that they submitted a version of Directive Nos. 4091 and 4944 with proposed redactions. But there were no redactions in the documents provided to the Court.

5

In short, Directive No. 4004 may be withheld in full. Directive Nos. 4008, 4091, and 4944 must be produced with only the limited redactions described above, subject to prior Court approval.

## II. The Emails (Exhibit C)

The DOCCS Defendants argue that Mr. Bright should not possess any of the emails and attachments in Exhibit C. In their view, the documents are either irrelevant to his claims or contain sensitive information that could compromise facility security. The Court has reviewed the documents. Most do not contain sensitive information. And where they do, targeted redactions can address the concern.

The DOCCS Defendants' own examples illustrate this point. They object to information about when a facility transfer is warranted, the operational capabilities of particular facilities, and the steps used to carry out a transfer. The Court agrees that such information could be misused by an incarcerated pro se litigant and is not relevant to Mr. Bright's claims. But it can be redacted. The same is true of documents discussing unrelated personnel matters or personal information about non-party employees.

But emails describing employee interactions with Mr. Bright are at least arguably relevant, even if they predate the first incident alleged in this case. They may provide context for his later allegations. And although some documents have only marginal relevance—meeting charts, for example, or lists of incarcerated individuals prescribed antipsychotic medication—they have already been heavily redacted so that only Mr. Bright's information remains visible.

With those principles in mind, the DOCCS Defendants must produce the following documents in the form specified below. Some documents may be redacted consistent with the guidance above and subject to the Court's approval.

| Bates Number | Form of Production (Unredacted or Redacted) |
|---|---|
| D_001224–2011 | Redacted |
| D_002012–44 | Unredacted |
| D_002046 | Redacted [4] |
| D_002047–48 | Unredacted |
| D_002049 | Redacted |
| D_002050 | Unredacted |
| D_002051 | Redacted |
| D_002149–51 | Unredacted |
| D_002154 | Redacted |
| D_002620–74 | Unredacted |
| D_002675 | Redacted [5] |
| D_002676–2741 | Unredacted |
| D_002742 | Redacted |
| D_002743–44 | Unredacted |
| D_002748–50 | Unredacted |
| D_002751–52 | Redacted |
| D_002753 | Unredacted |
| D_003020 | Unredacted |

## **CONCLUSION**

For the reasons explained above, the DOCCS Defendants' request is GRANTED in part and DENIED in part. By no later than May 4, 2026, the DOCCS Defendants are directed to submit their proposed redactions to the Court for approval.

**SO ORDERED.**

DATED:      White Plains, New York
            4/27/2026

_____
VICTORIA REZNIK
United States Magistrate Judge

---

[4] But do not redact the name of the investigator.
[5] Redact the entire page.