USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/10/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

Willie Bright,

Plaintiff,

-against-

Anthony J. Annucci et al.,

Defendant.

---------------------------------------------------------------X

18-cv-11111-NSR-VR

**ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

During this litigation, Plaintiff has raised numerous discovery issues, some of which were addressed with his limited pro bono counsel and others that remain outstanding. There are now only five items left to resolve: (1) Plaintiff's motion for pro bono counsel; (2) his motion to compel the DOCCS Defendants to produce several DOCCS Directives; (3) alleged spoliation by the DOCCS Defendants; (4) answers and interrogatory responses from newly added defendants; and (5) Plaintiff's ability to view evidence at his correctional facility. This Order addresses all remaining discovery issues and provides the final steps required to deem discovery complete.

## I. Plaintiff's Pending Motions for Pro Bono Counsel

In September 2024, Plaintiff moved for this Court to request that an attorney serve as his pro bono counsel. (ECF No. 292). Judge Román had previously denied a similar request after Plaintiff's relationship with his prior pro bono attorney broke down due to Plaintiff's conduct and a fundamental disagreement over what actions to take in the case. (*Id.*; ECF No. 274 at 2).

Those same concerns were present at the time of Plaintiff's September 2024 motion. (ECF No. 293 at 5). As a result, on October 16, 2024, the Court denied Plaintiff's motion, concluding that there was "no basis to believe that the attorney-client relationship between Plaintiff and a new attorney would lead to an outcome different than that of his prior counsel." (*Id.*). After the denial of the September 2024 motion, Plaintiff filed two additional motions for pro bono counsel, which were both denied "for the reasons stated in the October 16th order." (ECF Nos. 298, 328).

In April 2025, Plaintiff moved again for this Court to request that an attorney serve as his pro bono counsel. (ECF No. 344). This time, the Court granted the motion because "the circumstances of discovery ha[d] changed enough to warrant this Court's reconsideration" of the prior denials of Plaintiff's similar motions. (ECF No. 347 at 9–10). The case had become "consistently plagued by miscommunication among the parties" and an "unending volley of letters submitted by the parties." (*Id.*). At that time, the Court concluded that pro bono counsel for Plaintiff "would help the parties and the Court narrow the outstanding issues and complete discovery." (*Id.* at 10). The Court then issued a request for an attorney to provide "pro bono representation for Plaintiff for the limited purpose of completing discovery." (ECF No. 347 at 12).

Shortly thereafter, two attorneys from a small law firm filed notices of appearance on Plaintiff's behalf. (ECF Nos. 356, 360). Over the course of the next few months, three additional attorneys from a larger law firm (Cohen &

Gressler LLP) also filed notices of appearance on his behalf. (ECF Nos. 365, 368, 376). Plaintiff went from being represented by zero attorneys to being represented by five attorneys split across two different law firms. Initially, discovery proceeded more smoothly. But problems arose fairly quickly. By December 2025, only one attorney remained as pro bono counsel—the other four attorneys moved to be withdrawn as counsel. (ECF Nos. 372, 377).[1] And even the lone remaining attorney moved to narrow the scope of her pro bono representation to cover only paper discovery, which this Court granted. (ECF Nos. 382, 384). In June 2026, Plaintiff's pro bono representation ended after his counsel confirmed the completion of paper discovery. (ECF No. 430). Plaintiff now asks this Court to again issue a request for an attorney to represent him pro bono. (ECF No. 434).[2]

Unlike a criminal defendant, a litigant in a civil action has no right to counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). But under 28 U.S.C. § 1915, a court may request that an attorney serve as pro bono counsel for an indigent litigant in a civil case. *See* 28 U.S.C. § 1915(e)(1). In determining whether to issue an order requesting counsel, "[e]ach case must be

---

[1] The three attorneys from Cohen & Gressler LLP all moved to withdraw as counsel. (ECF No. 377). They explained that withdrawal was necessary because continuing to represent Plaintiff would result in violations of their professional conduct obligations and because of fundamental disagreements with Plaintiff about how to prosecute the case. (ECF No. 377-1). One of the attorneys from the smaller firm also moved to withdraw as counsel because she was leaving the firm and "ceasing all legal representation of clients associated with" that firm. (ECF No. 372).

[2] This request is the most recent among eight other motions Plaintiff made between July 2025 and May 2026—while his prior counsel was representing him. (ECF Nos. 354, 394, 396, 403, 409, 413, 420, and 428).

decided on its own facts." *Hodge*, 802 F.2d at 61. The threshold question is whether the movant's claims are "'likely to be of substance.'" *Alvarez v. Wright*, 797 F. App'x 576, 578 (2d Cir. 2019) (quoting *Hodge*, 802 F.2d at 61); *see also Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 69 (2d Cir. 2011). Once that threshold is satisfied, a court considers several factors, which include: "(1) the nature of the factual issues involved; (2) the importance of credibility determinations; (3) the plaintiff's apparent ability to present the case; and (4) the complexity of the legal issues involved." *Kearney v. Fischer*, 609 F. App'x 673, 676 (2d Cir. 2015), *cert. denied*, 577 U.S. 881 (2015); *see also Dolan v. Connolly*, 794 F.3d 290, 296–97 (2d Cir. 2015). But, ultimately, the decision to seek pro bono counsel lies within the "broad discretion" of the court making that determination. *Hodge*, 802 F.2d at 60.

Here, this Court already determined that "Plaintiff's remaining claims are likely to be of substance because they survived Defendants' separate motions to dismiss." (ECF No. 347 at 8) (citing *Ajaj v. Mackechnie*, No. 07 Civ. 5959(PKC)(DF), 2008 WL 3884375, at *2 (S.D.N.Y. Aug. 21, 2008) (finding plaintiff's claims had some chance of success because they survived motion to dismiss)). And this Court earlier concluded that several *Hodge* factors weighed in favor of issuing a request for pro bono counsel because the facts of the case "involve[d] a complex factual chronology with multiple incidents with multiple defendants over a period of several months," credibility determinations would be important because the allegations "depend largely on a recollection of what

happened on the dates of the alleged incidents," and Plaintiff's incarceration limited his ability to present his case. (ECF No. 347 at 8–9).

Even so, this Court now declines to request new pro bono counsel for Plaintiff at this stage. Plaintiff has already received pro bono representation twice, and none of his attorney-client relationships proved workable. The first attorney moved to withdraw just one week after appearing, citing Plaintiff's unwillingness to accept legal advice and a fundamental disagreement over how to litigate the case. (ECF No. 293 at 5). Plaintiff's second pro bono representation ended for similar reasons. Those attorneys sought to withdraw because they and Plaintiff fundamentally disagreed about how to handle his case and because Plaintiff asked them to take actions they could not pursue in good faith. (ECF No. 377-1 at 24).

That history matters. The Court's ability to recruit attorneys for pro bono representation in civil cases is limited, and each appointment demands substantial time and professional resources from volunteer counsel. The Court must therefore consider whether another request for counsel is likely to produce a workable attorney-client relationship. Plaintiff has already had two such opportunities, and both relationships broke down over fundamental disagreements about counsel's professional judgment and how to litigate the case. Nothing in the record suggests that a third attempt would fare any better. Thus, Plaintiff's motion for this Court to request pro bono counsel is DENIED.

Of course, this Court's denial of Plaintiff's motion does not prevent him from finding his own pro bono counsel. And in his most recent letter, Plaintiff mentions that he may have a new attorney to represent him. (ECF No. 442 at 2–3). As directed in this Court's Order entered July 31, 2026 (ECF No. 440), any new counsel must file a notice of appearance by August 24, 2026. (*Id.* at 2). If no attorney files a notice of appearance by that date, Plaintiff must still appear for his deposition on August 25, 2026. (*Id.*).

## II. Plaintiff's Motion to Compel DOCCS Directives

In February 2026, a dispute arose over Plaintiff's ability to retain possession of various documents deemed confidential by the DOCCS Defendants. (ECF Nos. 389, 392). Among those documents were multiple DOCCS Directives—policies and procedures used by DOCCS in operating its correctional facilities. (ECF No. 414 at 1–2). After an in camera review, this Court partially granted the DOCCS Defendants' request to prohibit Plaintiff from possessing the Directives. (*Id.* at 2–6). One of the Directives was shielded from production, but the others were produced to Plaintiff in redacted form. (*Id.*).

In a recent letter, Plaintiff stated that his prior pro bono counsel failed to obtain additional Directives that he needed to prosecute his case. (ECF No.

434).[3] The DOCCS Defendants responded by identifying three additional documents responsive to Plaintiff's request: (1) DOCCS Directive 4028A; (2) DOCCS Directive 4028B; and (3) a Corrections-Based Operations Manual from the Central New York Psychiatric Center. (ECF No. 436). The DOCCS Defendants were willing to produce unredacted copies of Directive 4028A and the Operations Manual, but they argued that Plaintiff should be prohibited from possessing a copy of Directive 4028B because it contained "detailed operational instructions and reporting infrastructure." (*Id.* at 1–2). More specifically, it contained "sensitive security material and operational practices regarding the manner in which [DOCCS] responds" to various situations that affect "the safety and security of correctional facilities or community supervision operations." (*Id.*).

As this Court stated previously in resolving the discovery dispute over the Directives in April 2026, a pro se incarcerated plaintiff may be prohibited from possessing a Directive when it contains "clearly sensitive information." *Bishop v. Emerson*, 9:24-cv-1549 (DNH/CBF), 2026 WL 861151, at *2–3 (N.D.N.Y. Mar. 30, 2026) (declining to compel production of DOCCS Directive because it contained "highly sensitive" information about "security in and around gates, gate areas, and secure posts"). But a generalized assertion that

[3] Plaintiff also alleged that his prior pro bono counsel never obtained an "OSI Investigation Directive." (ECF No. 434 at 1). In response, the DOCCS Defendants confirmed that they already produced "Directive 0700, titled 'Office of Special Investigations'" to Plaintiff with no redactions (ECF No. 436 at 1).

disclosure will affect institutional safety is not enough; there must be a concrete security concern. *See Culbreth v. Griffin*, 17 CV 3406 (KMK) (LMS), 2018 WL 11299396, at *5–6 (S.D.N.Y. Mar. 1, 2018).

Here, that standard does not justify withholding Directive 4028B. The information contained within Directive 4028B would not pose an obvious safety risk in the hands of an incarcerated plaintiff. Directive 4028B details DOCCS' zero tolerance policy towards sexual assault and the mechanism by which instances of "staff-on-inmate sexual abuse" are reported and investigated by the facility. The substance of this reporting infrastructure differs substantially from the infrastructure contained in Directive 4004 that this Court previously found was "highly sensitive" and warranted withholding from Plaintiff. (ECF No. 414 at 3).

The reporting information in Directive 4004 was considered highly sensitive because it was a "practical account of how the facility responds to emergencies and disruptive events, and how quickly it must do so." (*Id.* at 3). An incarcerated individual's knowledge of that information created "a genuine safety concern" because it could be used "to anticipate, evade, or frustrate an institutional response" to an emergency. (*Id.* at 3–4). The same security concerns are not implicated if an incarcerated individual has knowledge of how staff-on-inmate sexual abuse is reported and investigated. Directive 4004 involved "reporting and escalation timelines" for emergencies happening in real time (*id.* at 3), Directive 4028B does not. Thus, there is no clearly sensitive

information within Directive 4028B that requires it being withheld from Plaintiff.

And, in any event, the reporting of staff-on-inmate abuse is directly relevant to Plaintiff's claims in this case. The DOCCS Defendants are therefore directed to produce a copy of Directive 4028B to Plaintiff along with copies of Directive 4028A and the Operations Manual, which they already agreed to produce to him. *See Roland v. Hill*, 17-CV-6524-FPG-JWF, 2019 WL 112842, at *2 (W.D.N.Y. Mar. 12, 2019) (ordering production of DOCCS Directive 2111 about reporting employee misconduct because it was relevant to plaintiff's excessive force claims).

## III. <u>Purported spoliation of evidence</u>

Plaintiff also alleges that Defendants engaged in the spoliation of evidence. (ECF Nos. 420 at 1; 428 at 1–2; 442 at 3). Before her representation ended, Plaintiff's former pro bono counsel raised the issue at a February 2026 discovery conference and sought production of litigation holds so that Plaintiff could later pursue a spoliation motion. (ECF Nos. 389 at 4; 395). The DOCCS Defendants were directed to produce any relevant litigation holds to Plaintiff's pro bono counsel "as soon as possible." (*Id.*). Those materials were produced to Plaintiff when the pro bono representation ended. (ECF No. 430). If Plaintiff has the basis to make a spoliation motion for sanctions, he may do so. Any such motion, however, will not affect the completion of discovery.

## IV. <u>Service and discovery of newly added defendants</u>

Plaintiff asserts that there is "no evidence of the newly added defendants being served." (ECF No. 442 at 3). But all six newly added defendants waived service (ECF Nos. 421–25, 427) and answered the complaint (ECF No. 429). To the extent Plaintiff has not received copies of those answers, the Court directs counsel for the DOCCS Defendants to resend them to Plaintiff and file proof of service on the docket by August 14, 2026.

Plaintiff also asserts that he is "entitled to a response from all the newly added defendants." (ECF No. 442 at 2). It is unclear whether Plaintiff is referring to answers to the complaint or responses to interrogatories, and whether the interrogatories are old ones they failed to respond to or new ones that were sent only recently. By August 14, 2026, the DOCCS Defendants are directed to submit a letter responding to Plaintiff's allegations in ECF No. 442 regarding interrogatories. The letter should explain, among other things, whether interrogatories to the newly added defendants were discussed with Plaintiff's pro bono attorney before her representation terminated. If they were not discussed, the DOCCS Defendants are directed to provide their position on the issue.

Notably, the potential pendency of Plaintiff's interrogatories to those six defendants does not warrant postponement of Plaintiff's August 25, 2026, deposition. Under Rule 26 of the Federal Rules of Civil Procedure, discovery methods may ordinarily proceed in any sequence, and one party's outstanding discovery does not require an opposing party to delay its own. *See* Fed. R. Civ.

P. 26(d)(3). Plaintiff fails to show that responses by the six newly added defendants to his interrogatories are a necessary prerequisite to his ability to appear for his deposition and testify about his own claims, allegations, and knowledge. Plaintiff's deposition therefore will proceed as scheduled on August 25, 2026.

## V. Plaintiff's ability to view documents and videos at his facility

Previously, Plaintiff stated that he was unable to view documents and videos at his facility. (ECF Nos. 319 at 2–3; 340 at 3–4). Counsel for the DOCCS Defendants recently confirmed that Plaintiff was permitted to watch video evidence at his facility for a total of two hours split across two sessions, and he was being scheduled for another one-hour session in the future. (ECF No. 436 at 2).

## CONCLUSION

For the reasons explained above, Plaintiff's motion for pro bono counsel is **DENIED**. If Plaintiff obtains new pro bono counsel on his own, any notice of appearance by counsel must be filed by **August 24, 2026**.

The DOCCS Defendants' request to withhold production of Directive 4028B is **DENIED**. The Court directs the DOCCS Defendants to produce Directive 4028A, Directive 4028B, and the Operations Manual to Plaintiff by **August 14, 2026**. Upon such production, paper discovery will be deemed complete, subject to the outstanding issue of interrogatory responses from the newly added Defendants.

By **August 14, 2026**, the DOCCS Defendants are directed to mail Plaintiff a copy of the answers submitted by the newly added defendants and to file proof of service on the docket. By that same date, they must also submit a letter to the Court responding to Plaintiff's allegations regarding interrogatory responses from the newly added defendants.

As this Court ordered in ECF No. 440, Plaintiff is directed to appear for his deposition on **August 25, 2026**, answer questions, and complete his deposition.

The Clerk of Court is kindly directed to close the gavel associated with ECF No. 394.

**SO ORDERED.**

DATED: White Plains, New York
08/10/2026

VICTORIA REZNIK
United States Magistrate Judge